IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE SUAREZ, M17000, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-1363-RJD |
| | ) |
| LYNN PITTMAN, D.O., and RUSSELL GOINS, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on multiple motions by the parties. Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 USC §1983. He alleges that Defendants violated his First and Eighth Amendment rights at Lawrence Correctional Center (Doc. 1). Following the Court's threshold review conducted pursuant to 28 U.S.C. §1915A, Plaintiff's case proceeded on the following claims:

Count 1:   Eighth Amendment claim against Dr. Pittman and Warden Goins for deliberate indifference to Plaintiff's right knee pain.

Count 2:   First Amendment claim against Dr. Pittman and Warden Goins for retaliating against Plaintiff for filing a grievance related to his right knee pain.

Defendants now move for summary judgment, contending that Plaintiff failed to exhaust his administrative remedies (Docs. 39, 40, 41, 42). Plaintiff filed a Response (Doc. 4), conceding that he did not exhaust Count 2 but otherwise contending that he had fully exhausted administrative remedies regarding his allegations in Count 1. Plaintiff also filed a Motion for Leave to File Amended Complaint (Doc. 37).

**Background**

Page 1 of 8

Plaintiff injured his right knee while exercising at Lawrence Correctional Center in 2019 (Doc. 1, p. 7). A nurse practitioner ordered an x-ray, and the radiology report dated April 15, 2019 states "suspected osteochondral lesions along the medial femoral condyle. As clinically indicated, further evaluation with MRI may be considered" (*Id.*, p. 26). On November 17, 2019, Plaintiff submitted an emergency grievance, stating that he was "having continuous knee issues and no real help for my pain" and asked to be sent to a specialist at an offsite facility (Doc. 1, p. 15). On November 19, 2019, the Warden determined this grievance was not an emergency and Plaintiff was instructed to submit it as a non-emergency grievance (*Id.*). Plaintiff then submitted the grievance to his counselor on November 26, 2019. The counselor responded on December 19, 2019, providing the following information.

> Per [health care unit administrator] "I/m being seen and treated for complaint. 10/29/19 follow up right knee x-ray reviewed. Meds/plan of care-11/19/19 seen on NSC right knee pain. 12/2/19 NP [illegible] right knee improved [inmate reports] still bothering him. Referred to Dr. Pittman 12/5/19. Inmate seen by MD. Ordered meds. 12/13/19 inmate seen by MD. Assessment right knee. Degenerative joint disease low bunk/gallery plan of care."

Plaintiff's grievance records from Lawrence Correctional Center reflect that Plaintiff did not submit this grievance to the grievance officer (Doc. 42-2, p. 11). However, the Administrative Review Board ("ARB") received the grievance and the counselor's response on March 5, 2020. The ARB returned the grievance to him, instructing him to "provide a copy of the Response to Offender's Grievance, including the Grievance Officer's and [Warden's] response, to appeal" and informing him that "medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board" (Doc. 1, p. 23).

Plaintiff then submitted another emergency grievance at Lawrence on May 22, 2020 (*Id.*, p. 36). He wrote that he suffered a "substantial risk of imminent personal injury and irreparable harm" because the Warden had determined that his November 17, 2019 grievance was not an emergency. Plaintiff then stated the findings in the April 2019 x-ray report and described

additional findings in an x-ray report dated December 12, 2019. He noted that Dr. Pittman had ordered the December 2019 x-ray and another physician "signed off" on the order. Plaintiff stated that he continued to endure pain due to a lack of medical treatment. He requested treatment for his knee at an off-site medical facility. The Warden determined this grievance was "of an emergency nature" and should be expedited. The grievance officer issued a report, stating "[Plaintiff's November 2019] grievance was not submitted to 2d level for review. Offender does not provide an incident date within 60 days per [department rule] 504. This grievance is duplicate to a prior grievance." The grievance then recommended that the grievance be found "out of time frame." The Warden then concurred with this recommendation. Plaintiff appealed to the ARB, who determined the grievance was "not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further" (Doc. 42-1, p. 9-10).

### *Pavey* Hearing

On August 23, 2022, the Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Plaintiff testified that he first injured his knee in March 2019. He saw Dr. Pittman in April 2019 and then in December 2019. He also saw her in 2020, but he cannot recall the dates.

Plaintiff further testified that prior to filing this lawsuit, he thought that Defendant Goins was the Warden at Lawrence in November 2019. He subsequently learned that Dee Dee Brookhart was the Warden at that time. He referred the Court to his proposed amended complaint, in which he names Dee Dee Brookhart but not Defendant Goins.

Regarding the grievance process, Plaintiff testified that the November 2019 grievance was the first grievance he submitted regarding his knee injury. He submitted that grievance to the counselor's office and to the ARB. As for the May 2020 grievance, he does not agree with the grievance officer's finding that it was a duplicate grievance of the November 2019 grievance, explaining that he received another x-ray in between the November 2019 grievance and the May

2020 grievance.

Defendants did not call any witnesses.

## Legal Standards

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Exhaustion Requirements*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a)

should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). Within the grievance, the inmate must include "factual details regarding each aspect of [his] complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id*. §504.810(c). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e). Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

## Discussion

Neither the November 2019 grievance nor the May 2020 grievance exhausted Plaintiff's administrative remedies for his allegations in this case. Plaintiff submitted the November 2019 grievance to his counselor, and then the ARB-skipping the required step of submitting it to the

Grievance Officer at Lawrence. Plaintiff acknowledges that this grievance was not fully exhausted (Doc. 47, p. 3).

Regarding the May 22, 2020 grievance, however, Plaintiff argues that prison officials improperly determined it was out of the required 60-day time frame. He contends that because his knee pain was ongoing, he was grieving a continuous violation. This argument is not persuasive. While Plaintiff may have been in pain during the sixty days prior to filing the May 2020 grievance, he failed to identify any incident or occurrence regarding Dr. Pittman or the Warden (or any other prison staff member) within those 60 days. For example, the grievance does not indicate that he tried to seek treatment from Dr. Pittman for his knee during that period but was refused, nor does it indicate that he saw Dr. Pittman but received unsatisfactory treatment.

Instead, the grievance identifies two issues: 1) that the Warden determined Plaintiff's November 2019 grievance was not an emergency; 2) Plaintiff's physicians did not order an MRI after the April 2019 x-ray report suggested it, or additional treatment after the December 2019 x-ray report indicated Plaintiff's right knee had not changed. Plaintiff wrote that he "continued to endure pain" but did not attribute that pain to an act (or a refusal to act) by the Warden, Dr. Pittman, or any other staff member that occurred during March 22, 2020-May 22, 2020. To the extent that an incident with Defendants or any other staff member occurred during that 60-day period, Plaintiff failed to describe it in the requisite manner. 20 ILL. ADMIN. CODE § 504.810(c). If no such incident occurred during that 60-day period, then Plaintiff "simply failed to timely initiate the grievance process." *Williams v. Rajoli*, 44 F. 4th ---, Case No. 20-1963, p. 8 (7th Cir. Aug. 17, 2022).

In any event, Plaintiff did not follow the requirements of the administrative rules and he therefore failed to exhaust his administrative remedies. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2004) ("[t]his circuit has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process.) Defendants' Motions for Summary Judgment

are GRANTED.

**Motion for Leave to File Amended Complaint[1]**

In his proposed amended complaint, Plaintiff substitutes Assistant Warden Dee Dee Brookhart for Defendant Goins and adds Wexford Health Sources, Inc. (a private company that contracts with IDOC to provide medical care to inmates), John and Jane Does 1-6 (Wexford and IDOC staff who, Plaintiff alleges, participated in the decision to not provide additional treatment for his knee), and the Healthcare Unit Administrator.  Plaintiff alleges that all defendants were deliberately indifferent to his injured right knee because they did not order nor arrange for him to undergo an MRI and receive additional treatment following Plaintiff's April 2019 and December 2019 x-rays.   Plaintiff also alleges that Defendants retaliated against him.

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading and that leave to amend should be freely given "when justice so requires."   The Seventh Circuit maintains a liberal attitude toward the amendment of pleadings "so that cases may be decided on the merits and not on the basis of technicalities."  *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977).  However, leave should be denied if the amended pleading is futile.  *Guise v. BMW Mortgage, LLC*, 377 F.3d 795, 801 (7th Cir. 2004).

In his proposed amended complaint, Plaintiff alleges that he exhausted his administrative remedies via the November 2019 and May 2020 grievances.  Plaintiff's proposed amended complaint is therefore futile.   The deficiencies in those grievances were not unique to Plaintiff's claims against Warden Goins and Dr. Pittman.   The November 2019 grievance was never submitted to the grievance officer at Lawrence, and the May 2020 grievance did not identify *any* encounters with *any* staff members that had occurred in the previous 60 days.   Plaintiff cannot

---

[1] Plaintiff filed two Motions for Leave to Amend the Complaint within fourteen days, explaining in his second motion that he neglected to attach certain exhibits to the first proposed amended complaint. Plaintiff's first Motion for Leave (Doc. 36) is therefore DENIED AS MOOT.

proceed with the claims alleged in this case until he has exhausted his available administrative remedies. 42 U.S.C. § 1997e(a). Consequently, Plaintiff's Motion for Leave to Amend is DENIED.

## CONCLUSION

Plaintiff's Motion for Leave to Amend the Complaint (Doc. 37) is DENIED because the proposed amended complaint is futile. Defendants' Motions for Summary Judgment (Docs. 39 and 41) are GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to enter judgment accordingly. All other pending motions are denied as moot.

**IT IS SO ORDERED.**

**DATED: September 12, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**